UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:  BKY No. 14-40969

**Arthur Duane Fields,**
**Kristen Lee Fields,**    Chapter 13

      **Debtors.**
_____

**MEMORANDUM DECISION AND ORDER**
_____

At Minneapolis, Minnesota, May 27, 2016.

On April 28, 2016, this matter came on for hearing before the Court on the motion of Arthur Duane Fields, Jr. and Kristen Lee Fields ("the debtors" or "the Fields") seeking this Court's authorization to incur secured debt and to obtain credit to purchase a vehicle. The chapter 13 trustee ("the trustee") filed a timely response. At the conclusion of the hearing, the Court took this motion under advisement. The trustee timely filed a supplemental memorandum. Based on all the files, records, and proceedings herein, the matter is now ready for disposition.

**Background**

The Fields began their chapter 13 bankruptcy case on March 7, 2014. After their modified plan was confirmed on September 8, 2014, the Fields' circumstances changed in several respects. Faced with a job loss, the Fields moved to Los Angeles for work. There, one of the debtors' vehicles was wrecked, thereby limiting the debtors' options for transportation. In an effort to find a vehicle replacement, the debtors requested and received a standard letter from the trustee indicating that the trustee had no objection to obtain an auto loan as long as the loan wouldn't affect the ability of the debtors to make plan payments. The debtors notified the trustee's office about the finance manager of a California car dealership who required, in

addition to the standard letter of no objection, a "Letter to Incur Debt" detailing whether specific loan terms on the purchase of a vehicle were agreeable to the trustee. The trustee, however, would not deviate from the terms of his standard letter. The debtors then visited dealerships in the Los Angeles area, but to no avail. So, the debtors seek court authorization to incur debt and to obtain credit. But, can this Court grant such relief?

## Issue

Does the Bankruptcy Code[1] require a debtor in a chapter 13 case – who is not "engaged in business" – to obtain court approval when seeking to obtain post-petition credit and to incur debt to purchase a vehicle?

## Discussion

A search for statutory meaning begins with the statute itself. Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985). When the language of the statute is plain, "the sole function of the courts is to enforce it according to its terms." Caminetti v. United States, 242 U.S. 470, 485 (1917). "The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed." Ardestani v. INS, 502 U.S. 129, 135-36 (1991) (internal citations omitted). Statutory construction is a holistic endeavor. United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 371 (1988). When a court construes a statute, it is "to consider provisions in the context of the entire statute[.]" In re Dorholt, Inc., 239 B.R. 521, 527 (B.A.P. 8th Cir. 1999) (citing Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307-08 (1961)). Lastly, a court is to "to avoid a construction of one part or provision that renders

---

[1] Title 11 of the United States Code.

another part redundant or superfluous." Id. Viewed through an informed lens composed of these applicable cannons of construction, the Court will closely examine the Bankruptcy Code to glean therefrom any shred of guidance to resolve this issue.

By its plain terms, the Bankruptcy Code provides a visible route – one unavailable to the Fields – for a certain class of chapter 13 debtor to obtain post-petition credit, requiring, in certain instances, court authorization. Section 1304 expands the powers and duties of a class of chapter 13 debtors "engaged in business." 11 U.S.C. § 1304(a). By qualifying as a "debtor engaged in business" under § 1304, the Bankruptcy Code, through § 1304(b), allows the debtor to use, sell, or lease property of the estate in the ordinary course of business under 11 U.S.C. § 363(c), and to obtain credit or to incur debt under 11 U.S.C. § 364. A debtor so situated may utilize subsections (b), (c), and (d) of § 364, which require notice, a hearing, and court authorization.[2] To extend this route to debtors who are *not* "engaged in business" – as the Fields – would render § 1304 superfluous by stretching the definition of "debtor engaged in business" beyond its plain and statutorily-defined meaning. Further, contrasting the clear route accorded to those chapter 13 debtors who are "engaged in business" to the statutory silence with respect to those debtors who are not "engaged in business" tends to indicate something short of clear congressional intent to require court authorization to those debtors situated in the latter category.

The bankruptcy court, in In re Ward, traversed the terms of the Bankruptcy Code in response to a chapter 13 debtor who moved for reconsideration of an order denying leave to borrow money post-confirmation to purchase a vehicle. 546 B.R. 667 (Bankr. N.D. Tex. 2016).

---

[2] Because these debtors are not self-employed and do not incur trade credit in the production of income from self-employment, they do not qualify as debtors "engaged in business" under § 1304.

In doing so, the court synthesized the substantive authority surrounding a chapter 13 debtor who seeks to incur debt post-petition; and the court specifically reasoned that court approval is required whenever a significant post-petition debt is incurred by a debtor, "if for no other reason than because of the possible impact on the debtor's plan and the debtor's prospect for rehabilitation." Id. at 678 (emphasis removed).[3]

Although In re Ward detailed a careful and comprehensive analysis, this Court places more weight on 11 U.S.C. § 1305's structural placement in the Bankruptcy Code. A holder of a post-petition claim for "a consumer debt . . . that is for property or services necessary for the debtor's performance under the plan" ("necessary debt") under § 1305(a)(2) can seek allowance of that claim. Under § 1305(c), a claim for post-petition "necessary debt" "shall be disallowed if the holder of such claim knew or should have known that *prior approval by the trustee* of the debtor's incurring the obligation was practicable and was not obtained." (emphasis added). In turn, 11 U.S.C. § 1322(b)(6) allows a chapter 13 plan to provide for the payment of such a post-petition claim. The debtor can seek, in effect, a court's "blessing" through the interaction of 11 U.S.C. § 1329 and 11 U.S.C. § 1325.[4] Congress, through this statutory framework, provided a

---

[3] The court in In re Ward acknowledged, "To be clear, arguably, there is nothing in chapter 13 that either authorizes or prohibits the incurrence of postpetition debt *per se*. And arguably, there is nothing that requires court approval." 546 B.R. at 678.

[4] The substance and procedure within § 1329 dims to darkness the concern expressed by In re Ward that court authorization is required "if for no other reason that because of the possible impact on the debtor's plan and the debtor's prospect for rehabilitation." 546 B.R. at 678. Procedurally, FED. R. BANKR. P. 3015(g) requires, at minimum, 21 days notice to the debtor, the trustee, and all creditors of the proposed modification and the time fixed for filing objections to the modification. Substantively, § 1329(b)(1) requires compliance with § 1325(a). So any post-confirmation modified plan, in turn, has to satisfy § 1325(a)(6), which requires the court to make a determination that "the debtor will be able to make all payments under the plan and to comply with the plan[.]" Indeed, the trustee can share his input since it is he who shall "appear and be heard at any hearing that concerns . . . [a] modification of the plan after

route for a debtor who is not "engaged in business" to incur post-petition debt, and notably, such route is devoid of any language requiring court authorization.

## Conclusion

There is nothing in the Bankruptcy Code that requires court authorization for a debtor in chapter 13 who is not "engaged in business" to incur post-petition debt or to obtain credit. The absence of language allowing such, especially in light of the clear route set forth under § 1304 accorded to a debtor "engaged in business," shows a sufficient lack of congressional intent to the contrary. Stated another way, to require court authorization for a debtor not "engaged in business" would render § 1304 superfluous. Congress has provided a mechanism by which a debtor may deal with a change in circumstances post-confirmation. The design of § 1329 contemplates a modification of the original plan.[5] That procedure would be available to deal with the allowance, or not, of a post-petition claim under § 1305. In short, the absence of an expression in the Bankruptcy Code is not the same as the presence of an expression requiring court authorization for those debtors, such as the Fields, to incur post-petition debt and to obtain post-petition credit. Court approval is simply unnecessary under these circumstances.

---

confirmation[,]" under 11 U.S.C. § 1302(b)(2)(C). Also, the trustee has the duty to "advise, other than on legal matters, and assist the debtor in performance under the plan[,]" as required by § 1302(b)(4). This design allows both the court and other parties to assess a proposed modification's impact on a plan and the debtor's prospect for rehabilitation, i.e., it addresses the concern of In re Ward. 546 B.R. at 678.

[5] Indeed, one might consider the requested condonation in this case to be, at least potentially, an end run around § 1329.

5

**ACCORDINGLY, IT IS ORDERED** that the debtors' motion to incur debt and to obtain credit is **DENIED.**

*/e/ Michael E. Ridgway*

Michael E. Ridgway
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/27/2016*
Lori Vosejpka, Clerk, by MJS